## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**GEORGE HUGHES (#511277)**

**VERSUS**

**DARREL VANNOY, ET AL.**

**CIVIL ACTION**

**NO. 16-770-BAJ-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 5, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**GEORGE HUGHES (#511277)**

**VERSUS**

**DARREL VANNOY, ET AL.**

CIVIL ACTION

NO. 16-770-BAJ-RLB

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, George Hughes, challenges his conviction, entered in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of second degree murder. The petitioner contends that he was provided with ineffective assistance of counsel.

**Factual Background**

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal (*State v. Brown,* 11-0363 (La. App. 1 Cir. 9/4/12), 70 So.3d 297), are as follows: On the night of November 19, 2004, the victim, Drew Hawkins, was fatally injured by a single gunshot wound to the chest during a physical altercation with the petitioner. The petitioner is the father of Hawkins's live-in girlfriend, Amy Hughes. The petitioner never denied that he shot Hawkins. At trial, the petitioner testified that while he did, in fact, fire the shot that killed Hawkins, the shooting was not intentional. The petitioner claimed the gun accidentally went off when Hawkins grabbed the barrel during a struggle. The gun was recovered from the petitioner's vehicle after he gave the arresting officers consent to search it.

A review of the record reveals that the petitioner's testimony was contradicted by that of Amy Hughes and Sandra Allen, two alleged eyewitnesses. Amy Hughes testified that Hawkins

had his hands up and was backing away from the petitioner when the petitioner pulled out his gun and shot Hawkins from one to two feet away. Sandra Allen testified that she witnessed two men fighting, and while one was trying to back away with his hands up she heard a gunshot. After the gunshot, the man who was trying to back away was on the ground, and the other man left in a truck.

Other witness testimony was consistent with the testimony of the petitioner and impeached the testimony of Amy Hughes. Dr. Corrigan testified that the wound was a contact wound indicating that the shot was fired so close to the body that the barrel of the gun makes an impression on the skin and the tissues in the area. Eula Huffman, sister to Amy Hughes, testified that on the night of the shooting Amy told her that she did not witness the actual shooting because her back was turned as she tended to her child.

## Procedural History

After a trial by jury conducted in June of 2006, the petitioner was found guilty of second degree murder. The jury was not unanimous.[1] Post-trial motions were denied by the trial court. On June 9, 2006, the petitioner was sentenced to life at hard labor without benefit of probation, parole or suspension of sentence.

The petitioner subsequently filed a counseled appeal. On June 20, 2007, the petitioner's conviction and sentence were affirmed by the appellate court. *See State v. Hughes,* 06-2422 (La. App. 1 Cir. 6/20/07), 2007 WL 1765559. Writs were denied by the Louisiana Supreme Court on January 11, 2008. *See State v. Hughes,* 07-1490 (La. 1/11/08), 972 So.2d 1162. The petitioner thereafter filed an application for post-conviction relief on or about April 7, 2009, which was denied by the trial court on March 16, 2015. Writs were denied by the appellate court and the

---

[1] Louisiana law at the time of the trial permitted non-unanimous jury decisions under these circumstances.

Louisiana Supreme Court on August 10, 2015 and October 17, 2016, respectively. *See State v. Brown,* 15-0772 (La. App. 1 Cir. 8/10/15) and *State ex. Rel. Hughes v. State,* 15-1697 (La. 10/17/16), 202 So.3d 478. The instant application for habeas corpus relief was filed in this Court on November 18, 2016.

## Applicable Law and Analysis

### Timeliness

The State first asserts the petitioner's application is time-barred. Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a properly filed application for state post-conviction or other collateral review is thereafter pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are no properly filed post-conviction or other collateral review proceedings pending does count toward calculation of the one-year period. To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Further, a properly-filed state application is considered to be "pending" both while it is before a state court for review and also during the interval after a state court's disposition while the petitioner is procedurally authorized under state law to proceed to the next level of state court consideration. *See Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In the instant case, it appears that more than a year elapsed during which the petitioner did not have any properly filed applications for post-conviction or other collateral review pending before the state courts, and the petitioner's application is untimely. However, the record reflects that there is a basis for equitable tolling in this case. In this regard, the one-year federal limitations period is subject to equitable tolling only "in rare and exceptional circumstances." *See United States v. Patterson,* 211 F.3d 927, 928 (5th Cir. 2000).

Similar to the petitioner in *Prieto v. Quarterman*, 456 F.3d 511 (5th Cir. 2006), the petitioner relied on an Order issued by a district judge of this Court for the express purpose of granting him additional time to file his writ of habeas corpus. *See Hughes v. Cain, et al.,* Civil Action No. 15-795 (M.D. La.), Record Document No. 10. *See Prieto,* 456 F.3d at 515 ("district court's order granting him additional time for the express purpose of filing his petition at a later date was crucially misleading."). Such circumstances are sufficiently rare and exceptional to warrant equitable tolling. Since the instant petition is not time time-barred, the merits of the petitioner's claims must be considered.

**Standard of Review**

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state

court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief.

## Substantive Review

### Ineffective Assistance of Counsel

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The

petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for

ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### *Claim 1: Failure to Investigate and Interview Sandra Allen*

The petitioner asserts that his trial counsel was ineffective for failing to conduct an investigation regarding the statements of Sandra Allen, an alleged eyewitness, and to interview her regarding the same. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989). To render performance that is constitutionally sufficient, counsel should pursue all reasonable leads. In evaluating counsel, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. *Wiggins v. Smith*, 534 U.S. 524-527 (2003).

Shortly after the incident, Sandra Allen gave a written statement. Therein, she wrote that she was sitting in her front room when she heard someone calling for help. She then heard a gunshot and exited her home where she saw two people arguing. She then saw a red truck back out and travel down Central Woods Avenue towards Sullivan Road. Approximately one week prior to the trial, the petitioner's trial counsel was informed that Sandra Allen would testify at the trial that she had witnessed the shooting and that the victim had his hands in the air and was surrendering when he was shot. At trial, Sandra Allen testified that she heard someone call for

help, and exited her home. She then saw two men arguing and pushing each other, when one man backed away with his hands up. She then heard a gunshot. With regards to the discrepancies in her written statement, Ms. Allen explained that she had "transposed" the sequence of events.

At the second evidentiary hearing conducted with regards to the petitioner's application for post-conviction relief, the petitioner's trial counsel, Scott Collier, testified that he did not interview Sandra Allen or her roommate, Lee Allen, prior to the trial. Consequently, Mr. Collier did not discover that Sandra Allen had given a television interview during which she stated that she heard the gunshot and then exited her home, which was consistent with her written statement. Mr. Collier was also unaware that Sandra Allen had a roommate, Lee Allen, who would testify that she was sitting at the computer and Sandra Allen was sitting nearby, when they heard a gunshot. Sandra Allen then exited her home and called the police.

In *Anderson v. Johnson*, 338 F.3d 382 (5th Cir. 2003), a case noted in the Commissioner's Recommendation that relief be granted, Anderson was convicted in connection with the attempted kidnapping and shooting of Dorothy Brister. The Court concluded that Anderson's counsel was ineffective for failing to investigate and interview Arthur Gray, one of two adult witnesses to the events. The decision to forego the investigation was not reasoned and not part of a calculated trial strategy. The state's case rested primarily on the eyewitness testimony of the victim and her daughter, who was a child when she witnessed the incident three years prior. No other eyewitnesses testified at the trial, and there was no physical evidence linking Anderson to the crime. Accordingly, the Fifth Circuit affirmed the judgment of the District Court directing the State to retry Anderson within 120 days or dismiss the charges against him.[2]

---

[2] In finding prejudice, the Fifth Circuit noted that Anderson had been tried once before and the jury was unable to reach a verdict. *Anderson*, 338 F.3d at 394. In the instant case, one juror did not join in the verdict rendered.

In the instant matter, Sandra Allen was one of two alleged eyewitnesses.[3] Of those witnesses, she is the sole witness that could be considered "disinterested" to the outcome of the case. The petitioner's trial counsel testified that he did not interview Sandra Allen because he thought "certainly she cannot deviate from this statement."[4] Counsel also testified that he may have known about Sandra Allen's television interview prior to trial but possibly forgot that he knew about it. In any case, he made no effort to secure a copy of the interview prior to the trial and was unaware of the existence of Lee Allen.

As noted in *Anderson*, failure to interview a witness is not an excusable strategic decision simply because the witness may not be credible. A lack of credibility might be a strategic decision not to call a witness to testify at trial, but a witness's character flaws cannot support a failure to investigate. *Anderson,* 338 F.3d at 392 (*citing Bryant v. Scott,* 28 F.3d 1411, 1418 (5th Cir. 1994). The record fails to support that counsel's decision to forego an investigation and interview of Sandra Allen was reasonable under the circumstances. It is without dispute that "an attorney must engage in a reasonable amount of pretrial investigation and[,] at a minimum interview potential witnesses and make an independent investigation of the facts and circumstances of the case." *Bryant v. Scott,* 28 F.3d 1411, 1415 (5th Cir. 1994).

The record before the Court also establishes that but for counsel's unprofessional errors, there is a reasonably probability that the result of the proceeding would have been different. As mentioned, Sandra Allen was the sole disinterested alleged eye witness. Had counsel conducted an appropriate investigation, he would have discovered the television interview of Sandra Allen

---

[3] The other alleged eyewitness was Amy Hughes, the daughter of the petitioner, whose testimony at trial was also inconsistent with her statements made to law enforcement and discredited by the testimony of her sister, Eula Huffman.

[4] Trial counsel also did not interview Amy Hughes because "she was not communicating with George or his family anymore,' and counsel felt the physical evidence would contradict Amy's testimony.

and the existence of Lee Allen prior to trial. Certainly, the television interview and the testimony of Lee Allen would have greatly diminished Sandra Allen's credibility, leaving only the inconsistent testimony of Amy Hughes and the physical evidence of a contact wound which corroborates the petitioner's version of events. As noted by the Commissioner, the evidence of specific intent in this case was not so extensive as to render harmless the errors of petitioner's trial counsel.

In *Koon v. Cain,* 277 F. App'x 381 (5th Cir. 2008) the Court found that Koon was prejudiced by his counsel's failure to interview Robinson, the sole eyewitness. The Court noted, "If Monahan had interviewed Robinson before trial, she may have told the truth instead of controverting Koon's testimony regarding his state at the time of the killings. It follows that the jury could have and likely would have given greater consideration to the "heat of passion" aspect of Koon's defense. If, on the other hand, Robinson had continued to insist on denying that she had told Koon about his wife's affair after Monahan interviewed her, he would have been aware of Robinson's intended testimony and could have adjusted his defensive strategy accordingly and mitigated the damaging effects of Robinson's testimony."

The same is true in the instant matter. Had petitioner's trial counsel interviewed Sandra Allen and her roommate Lee Allen, Sandra may have testified consistently with her written statement and her television interview. Or, if she insisted that she witnessed the shooting, counsel for the petitioner could have adjusted his defensive strategy to mitigate the damage of Sandra Allen's testimony. Instead, the petitioner's trial counsel was ill prepared for the testimony of Sandra Allen, having discovered that she intended to change her testimony only days before trial, resulting in Allen's testimony giving credence to the inconsistent testimony of Amy Hughes, the other alleged eye witness who counsel for the petitioner also did not interview.

Similar to *Anderson,* the trial court herein denied the petitioner's PCR claims in a one-paragraph order, without specifically addressing the ineffectiveness of trial counsel.  Given trial counsel's admitted failure to investigate and interview at least one crucial alleged eyewitness and the prejudice stemming therefrom, the trial court's ultimate legal conclusion was objectively unreasonable.

### *Claim 2:  Failure to Call Jamie Mobley and Denise Feldman*

The petitioner next asserts that his trial counsel was ineffective for failing to call Jamie Mobley and Denise Feldman to testify at trial.  It appears that someone on behalf of the petitioner interviewed Mobley and Feldman prior to the trial, and counsel for the petitioner subpoenaed them both for trial.  Once the trial court disallowed any testimony regarding domestic violence, counsel chose not to call them as witnesses.

To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness' proposed testimony, and show that the testimony would have been favorable.  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  Claims of uncalled witnesses are disfavored, however, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony.  *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007).

In the instant matter, Jamie Mobley and Denise Feldman were both available to and were willing to testify at trial.  At the first evidentiary hearing on the petitioner's post-conviction claims, Jamie Mobley testified that she spoke with Amy Hughes two days after the shooting, and Amy told her that the victim put the barrel of the gun up to his chest and told the petitioner to

shoot him. Ms. Mobley also testified that she spoke with Sandra Allen following the shooting, and Sandra told her that all she saw was a man get in a red truck and drive away.

Denise Feldman testified that she gave a television interview following the shooting, wherein she discussed the abuse of Amy Hughes by the victim. After the interview aired, the victim's sister and aunt came to Ms. Feldman's house where they encountered her partner. The victim's family members threatened to "take care of" Ms. Feldman if she said anything else derogatory about the victim.

The Court does not find the petitioner's argument to be persuasive. With respect to Denise Feldman, her testimony does not appear to be especially relevant. Aside from the speculative theory that the victim's family threatened Amy Hughes and Sandra Allen, providing a possible reason why these witnesses changed their testimony at trial, it does not appear that Ms. Feldman had any additional testimony to offer that was not precluded by the trial court's determination regarding prior domestic violence.

With respect to Ms. Mobley, it appears that when the trial court disallowed any testimony regarding domestic violence, counsel for the petitioner chose not to call Ms. Mobley for any other purpose. Although the Court does not decide whether Ms. Mobley's testimony could also survive a hearsay objection, the Court notes that Ms. Hughes was extensively examined at trial regarding her prior statements and any inconsistencies regarding those statements. The trial court likewise allowed Ms. Huffman to testify regarding those statements, over objections from the prosecution. Ms. Mobley's testimony would have been cumulative. The Court will not second guess trial counsel's decision not to call Ms. Mobley after such similar testimony was offered by Ms. Huffman, and this decision was not unreasonable under *Strickland*. In addition, considering the cumulative nature of the testimony, even if the failure to call Ms. Mobley was

unreasonable, the Court does not find that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

*Claim 3: Failure to Assert a Justification Defense*

Finally, the petitioner asserts that his trial counsel was ineffective for failing to assert a justification defense. Under Louisiana law, the fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. La. R.S. 14:18. The defense of justification can be claimed when the offender's conduct is in defense of persons or of property. *See* La. R.S. 14:18(7). The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:19A(1)(a). The aggressor or the person who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21. Louisiana Revised Statutes 14:22 provides, in pertinent part, "It is justifiable to use force or violence…in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person." In a homicide case, the justification defense falls under Louisiana Revised Statute 14:20, which provides in part,

> "A homicide is justifiable:
> (1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
> (2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the

> fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.

At trial, the petitioner's counsel presented a defense of an accidental discharge, which was consistent with the petitioner's statement to the police, trial testimony, and the forensic evidence.  Presentation of a justification defense would have provided a contradictory explanation for the shooting (accidental discharge versus a justifiable homicide).  Additionally, the petitioner's trial testimony was not sufficient to establish a justification defense.  The petitioner was the aggressor in the conflict which had ended, resulting in the petitioner instructing his daughter to gather her children so they could leave.  Once the victim saw the gun, he began acting erratically, but the petitioner did not pull the weapon from his pocket out of fear for himself or others.  Rather, he intended to put the gun on his truck, and as he was attempting to do so, the victim grabbed the gun and struggle ensued during which the gun discharged and the victim was shot.  There was simply no evidence that the petitioner felt that he or others were being threatened by the victim at the time he removed the weapon from his pocket.  According to the petitioner's account, he had just "whooped" the victim, and his daughter was not in danger.

The petitioner's trial counsel consulted with the petitioner on numerous occasions, and the petitioner never wavered from his statement that the shooting was accidental.  Accordingly, counsel chose to present a defense of an accidental discharge, and felt that a justification defense would damage the petitioner's credibility.  In this regard, the petitioner has failed to establish that his counsel was ineffective, and even if this Court were to assume that counsel was ineffective, the petitioner has also failed to establish that but for the error, the result of the proceeding would have been different.

**RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be granted and the state court be directed to retry the petitioner.

Signed in Baton Rouge, Louisiana, on February 5, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**